**In the Interest of M.A.S.**

No. 05–05–01081–CV.

Court of Appeals of Texas,
Dallas.

Sept. 18, 2007.

Barbara A. Dakin, Frisco, for Appellant.

Jerry Sanger, Oklahoma City, OK, for Appellee.

Before Justices WRIGHT and O'NEILL.[1]

## OPINION NUNC PRO TUNC

Opinion by Justice WRIGHT.

In this child custody case, Mother appeals from a judgment awarding sole conservatorship of her son to Father. Mother also appeals from a sanctions award. In twelve issues, Mother contends generally: (1) the trial court erred in instructing the jury; (2) the evidence is legally and factually insufficient to support modification of the child custody order; (3) the trial court erred in not filing findings of fact and conclusions of law; (4) the trial court erred in ruling on evidence; (5) the trial court abused its discretion in limiting Mother's case-in-chief; (6) the trial court erred in entering the sanctions order following the expiration of its plenary power; (7) the evidence is legally and factually insufficient to support the award of attorney's fees as sanctions; and (8) the evidence is legally and factually insufficient to support the trial court's finding that Mother is a vexatious litigant. We sustain Mother's sixth issue to the extent that we modify the possession order in two respects. As modified, we affirm the trial court's modification order. With respect to the sanctions order, we sustain Mother's tenth issue and reverse the trial court's sanctions order as void.

### Background

Mother and Father had one son born on July 7, 1992. In 1994, Mother and Father

---

1. Although Justice Lang–Miers was a member of the panel at the time this case was argued and submitted for decision, she did not participate in the issuance of this opinion. *See* Tex.R.App. P. 41(a) & (b).

divorced and Mother was awarded sole conservatorship of the child. On August 16, 2004, Father filed a petition to modify the parent-child relationship. He sought to be appointed sole managing conservator of the child. Father lives in Oklahoma and Mother lives in Texas.

The case proceeded to trial before a jury. Father presented several witnesses. Michael Navarro, a psychotherapist, testified that he had seven sessions with the child in Oklahoma. Father brought the child for counseling to help him. At their first session, the child asked how he could escape from his Mother's home. The child stated that his Mother told him that she wished she had aborted him. Mother had been physically abusive to the child as well. She had punched him in the stomach and thrown a bookshelf at him. At nearly every session, the child stated that he wanted to live with his Father. Navarro testified that the child appears to be truthful. Navarro testified that the child had a good relationship with Steven, Father's first son from a previous marriage. Navarro did state that the child loved his Mother and that he tried to protect her.

Kristi Sanger testified that she had been married to Father since 1997 and that they had a three-year-old son named Jason. The child gets along well with Jason. He stated that the child sometimes cries after speaking on the phone with his Mother. She testified that Mother had refused to allow Father access to the child. Sanger testified that she and Father could provide a stable home for the child.

Records from the Frisco Police Department were admitted into evidence. The records detail numerous calls to Mother's home. In one incident, the child reported that his Mother picked up a bookshelf and said, "I will kill you with this if you don't go to your room." The child got scared and ran into his Mother's home office where she picked up a paperweight and said, "I'll bash your head in with this if you do not go to your room." The child also stated in the report that in the past, his Mother had made similar threats toward him while holding a knife in her hands.

Frisco Police Officer Brandon Adams testified that he was called to Mother's home on August 9, 2004 to take a runaway report. Mother and child had an argument about him wanting to quit band. She did not want him to quit because she had just purchased an instrument for him. Frisco Police Officer Joshua Storm testified that he picked the child up at a neighbor's house on August 10, 2004 and took him into custody. The child stated that his Father was coming to get him. His Father came to the police station. However, the child was released to his Mother. Storm testified that the Father seemed concerned about the child's well-being and that it appeared the child wanted to go with his Father.

Officer Adams was called to the house again on September 17, 2004 after receiving a welfare call from Father. Father was at the airport in Oklahoma City to pick up the child and he was not there. Father was unable to reach the child on his cell phone.

Terry Lynn Poque, Jr. is the assistant principal at Clark Middle School in Frisco. The child had recently been suspended from school because he had threatened to stab another student. The child admitted to his actions. Pogue believes the child tells the truth. Pogue testified that Father had called the school on several occasions to see how the child was doing. Father always behaved appropriately in his contacts with the school. Mother's contacts with the school, on the other hand, were more contentious. Mother had a conversation with one of the child's teachers and upset the teacher so much that she

cried. After that incident, Mother had to go through the principal's office when she wanted to speak with any of the child's teachers. Mother also got upset when Father picked up the child early from football practice with the coach's approval. She came to the school with the police.

Debra Moore, Father's neighbor for three and one-half years, testified that Father is very calm and patient. She testified that the child has a good relationship with his half-siblings.

Father testified that he had purchased at least twelve airplane tickets for the child and Mother failed to put him on the plane. He testified that communication with Mother is very difficult. Mother had clawed Father's neck and thrown things at him. Father believed the child when he told him that Mother was abusive. Father testified that Mother's animosity toward him had increased along with her attempts to limit his access to the child. Following the conclusion of Father's testimony, he rested his case.

Mother, a lawyer licensed to practice law in Oklahoma, represented herself at trial. She testified on her own behalf and did not present any other witnesses. She denied ever hurting the child. She said Father constantly threatens her with legal action. Mother contends Father discussed the custody litigation with the child and that he extended the child's summer visitation without agreement. She testified that several times Matthew returned with injuries from visitation with his Father. She testified that Father is disrespectful in his communications with her.

Mother also testified that the child is involved in church, school, and sports activities and that he wanted to continue in those activities. The child loves animals and he has several pets. She provides him with a nice home. She said that the child is happy living with her.

## Jury Charge

In her first issue, Mother contends the trial court misapplied the family code resulting in the infringement of her fundamental right of conservatorship. At trial, Mother and Father both objected to the original charge. Father objected on the grounds that the statute required the jury to find, in addition to best interest of the child, that either a substantial change in circumstances had occurred *or*, not *and*, that the child had filed a written preference of which parent he would like to designate his primary residence. The Mother objected on the ground that the original charge listed best interest of the child last and the statute lists it first. The trial court subsequently revised the charge, making the change requested by Father. Mother did not object to the revised charge. A complaint about a jury instruction is waived "unless specifically included in the objections" to the charge. *Willis v. Donnelly*, 199 S.W.3d 262, 275 (Tex.2006); TEX.R. CIV. P. 274. Because Mother did not object to the revised charge, she has waived her complaint on appeal. We overrule Mother's first issue.

## Sufficiency of the Evidence

In her second issue, Mother contends the evidence is legally and factually insufficient to support the jury finding that modification of custody is in the best interest of the child. In her third issue, Mother contends the evidence is legally and factually insufficient to support the jury finding that there had been a material and substantial change in circumstances.

We review the trial court's decision to modify conservatorship under an abuse of discretion standard. *Seidel v. Seidel*, 10 S.W.3d 365, 368 (Tex.App.-Dal-

las 1999, no pet.). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding principles. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990) (per curiam); *Pickens v. Pickens,* 62 S.W.3d 212, 214 (Tex.App.-Dallas 2001, pet. denied). Legal and factual sufficiency of evidence challenges are not independent grounds for asserting error under the abuse of discretion standard, but they are relevant factors in assessing whether the trial court abused its discretion. *Pickens,* 62 S.W.3d at 214; *Dunn v. Dunn,* 177 S.W.3d 393, 396 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). In a legal sufficiency review, we view the evidence in a light favorable to the finding, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). When reviewing the factual sufficiency of evidence, we examine all the evidence and set aside a finding only if it is so contrary to the evidence as to be clearly wrong and unjust. *Cameron v. Cameron,* 158 S.W.3d 680, 683 (Tex.App.-Dallas 2005, pet. denied).

■ The evidence at trial included the child's preference to have his Father designate his primary place of residence. Father testified that the child wanted to live with him. Navarro, the psychotherapist, testified that at nearly all of the seven sessions, the child stated that he wanted to live with his Father. A neighbor and co-worker testified on behalf of Father that he was a good parent. The child had a good relationship with the Father's other two sons and with his current wife. Father testified that Mother had interfered with his visitation rights on numerous occasions.

The evidence showed that Mother met the physical needs of the child and was very involved with his school. While living with Mother, the child was involved in extra-curricular activities. Navarro did state that the child loved his Mother. There was evidence, however, that Mother had physically and verbally abused the child. Police reports indicated that the child reported that his Mother picked up a bookshelf and said, "I will kill you with this if you don't go to your room." The child got scared and ran into his Mother's home office where she picked up a paperweight and said, "I'll bash your head in with this if you do not go to your room." The child also stated in the report that in the past, his Mother had made similar threats toward him while holding a knife in her hands. Mother denied that she had ever abused the child.

Considering all of the evidence, we conclude the evidence is both legally and factually sufficient to support the jury's finding that naming Father as the sole managing conservator was in the child's best interest. We hold the trial court did not abuse its discretion in modifying the conservatorship of the child to name Father sole managing conservator. We overrule Mother's second issue.

■ In her third issue, Mother contends the evidence is legally and factually insufficient to support a finding of a material and substantial change in circumstances. It was not necessary, however, for the jury to have found a material and substantial change in circumstances. Under section 156.101, a trial court may modify a custody order if the fact finder finds that it is in the best interest of the child and the circumstances have materially and substantially changed *or* the child has filed with the court in writing the name of the person who the child would like to have the exclu-

sive right to designate the primary residence of the child.[2] The evidence in this case includes the child's written statement of preference naming Father as the person the child wished to have the exclusive right to determine his primary residence. This evidence alone was sufficient to support the second prong for modification if the jury found it to be in the child's best interest. Thus, we overrule Mother's third issue.

## Trial Court's Interview

■■■■■ In her fourth issue, Mother contends the trial court erred in admitting evidence of the trial court's interview with the child. Assuming the admission of the trial court's interview with the child into evidence was error, we conclude it was harmless. The child's written statement of preference was sufficient evidence alone to support the trial court's modification of conservatorship. Also under her fourth issue, Mother contends the trial court erred in admitting the written preference into evidence because it was hearsay. Mother, however, did not raise a hearsay objection to the admission of the statement. Accordingly, she has waived such complaint. We overrule Mother's fourth issue.

## Child Support

In her fifth issue, Mother contends the trial court erred in entering a child support order without proper findings of fact. Mother also contends the trial court abused its discretion in determining the amount of child support.

■■■ The trial court has wide discretion in determining child support, and we will reverse the order only if it appears from the record as a whole that the trial court abused its discretion. *In re E.A.C.*, 162 S.W.3d 438, 441 (Tex.App.-Dallas 2005, no pet.); *Deltuva v. Deltuva*, 113 S.W.3d 882, 886 (Tex.App.-Dallas 2003, no pet.). A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner or when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). A child support order entered pursuant to the family code guidelines is presumed correct and reasonable. TEX. FAM.CODE ANN. § 154.122(a) (Vernon 2002).

■■■ A trial court must make findings with respect to a child support order if: (1) a party files a written request within ten days of the date of the hearing; (2) a party makes an oral request during the hearing; or (3) the amount of child support ordered by the trial court varies from the amount

2. Section 156.101 of the family code sets forth the grounds for modification of a child custody order. It provides as follows:

> The court may modify an order that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child if modification would be in the best interest of the child and:
> (1) the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of:
> (A) the date of the rendition of the order; or

> (B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based;
> (2) the child is at least 12 years of age and has filed with the court, in writing, the name of the person who is the child's preference to have the exclusive right to designate the primary residence of the child; or
> (3) the conservator who has the exclusive right to designate the primary residence of the child has voluntarily relinquished the primary care and possession of the child to another person for at least six months.

TEX. FAM.CODE ANN. § 156.101 (Vernon Supp. 2006).

computed by applying the percentage guidelines. *See* TEX. FAM.CODE ANN. § 154.130(a)(1)-(3) (Vernon 2002). The trial court conducted the hearing and entered its order on May 11, 2005. Mother filed her request for findings under section 154.130 on June 7, 2005. Because Mother filed her request more than ten days following the hearing, her request was untimely. Moreover, Mother did not make an oral request for findings during the hearing. Consequently, findings were required under section 154.130 only if the amount of child support ordered by the trial court varied from the amount computed by applying the percentage guidelines. *See* TEX. FAM.CODE ANN. § 154.130(a)(3) (Vernon 2002).

The record includes a copy of one of Mother's pay stubs. It lists Mother's net monthly income at $2,766.93.[3] Mother testified that her cost of providing insurance for the child was $147.12 per month. In determining net monthly income, expenses for health insurance for the obligor's child are deducted. *See* TEX. FAM.CODE ANN. § 154.062(d)(5) (Vernon 2002).[4] Thus, deducting the Mother's cost of health insurance for the child, her net monthly income is $2,619.81. When the obligor's monthly net income is less than $6,000.00, the child support guidelines provide the obligor to pay twenty percent of the monthly net income for one child. *See* TEX. FAM.CODE ANN. § 154.125(b) (Vernon 2002). Twenty percent of that amount equals $523.96. The trial court ordered Mother to pay monthly child support in the amount of $521.00. The ordered amount was within

the statutory guidelines. Accordingly, the trial court was not required to make findings of fact with regard to the court ordered child support. *See Deltuva*, 113 S.W.3d at 886).

We conclude the trial court did not abuse its discretion in determining the amount of child support Mother is required to pay. We overrule Mother's fifth issue.

### Possession Order

In her sixth issue, Mother contends the trial court erred in entering a non-standard possession order without filing findings of fact. She contends the trial court's possession order deviates from the standard possession order in several ways.

Mother first asserts that the trial court's order varies from the standard possession order in that it requires Mother to provide fourteen to thirty days' letter notice of her intent to take possession of the child at an airport. She contends this is contrary to the family code provision of written or telephonic notice fourteen days prior to the desired period of possession. *See* TEX. FAM.CODE ANN. § 153.313(1) (Vernon 2002). She also complains that no similar notice restriction is placed on Father.

The complained-of notice provision is under the heading "Means of Travel." Under this section, the trial court sets forth provisions for air travel if the parties choose that mode of transportation. Airplane travel is *not* mandatory, it is optional. When specifying a means of travel, even if optional, the trial court must speci-

---

**3.** Mother asks that we find her net monthly income to be $2,671.30 by using the Office of the Attorney General 2005 Tax Chart. The use of that Chart is not appropriate in this case because it provides for the deduction of federal income taxes and Mother admits that federal income taxes are not deducted from her pay check.

**4.** Contrary to Mother's contention at trial, the mandatory retirement deducted from her income is not deducted for purposes of determining net resources for child support calculation purposes.

fy the duties of the conservators to provide transportation to and from the airport. *See* TEX. FAM.CODE ANN. § 153.257 (Vernon 2002). The trial court's notice provision is merely part of those duties. It is prudent to require written notice when flight numbers and flight times are involved. Moreover, contrary to Mother's contention, Father is likewise required to give written notice when he desires to pick up the child at an airport near his home. Father cannot, however, give notice of a return flight until he receives notice from the Mother of the date she intends to take possession of the child.

Mother contends the trial court has restricted the means of travel to air travel without the requisite showing of good cause. *See* TEX. FAM.CODE ANN. § 153.257 (Vernon 2002). As noted above, however, the trial court did not restrict the means of travel. The trial court provided for airplane transportation as an option. Because air travel is not a required means of transportation, a showing of good cause was not required.

Mother also contends that the trial court's provision with regard to air travel interferes with her time of possession. The trial court orders that if Mother chooses air travel, Father shall place the child on a Southwest Airlines flight leaving Oklahoma City at 6.45 p.m. or as close to that time as possible. The trial court further orders that if Father chooses to have the child returned by air travel, Mother shall place the child on a Southwest Airlines flight leaving Dallas at 5:30 p.m. or a flight as close to that time as possible. Mother contends these flight times interfere with the standard possession time of 6:00 p.m. Friday to 6:00 p.m. Sunday. Again, we reiterate that air travel is a choice, not a requirement. Moreover, in setting forth an optional means of travel, the trial court must set forth provisions for getting the child to and from the airport. Due to the nature of air travel, it is impossible for possession between conservators to change at precisely 6:00 p.m.

Mother does highlight an inconsistency in the trial court's order. Page thirteen of the order contains two conflicting paragraphs. In one paragraph it states that Mother shall arrange and pay for the child's ticket from Oklahoma City to Dallas and Father shall arrange and pay for the child's return flight from Dallas to Oklahoma City. In the following paragraph, the trial court orders Mother to pay for the child's round-trip airline ticket. At a hearing following the entry of the trial court's order, counsel for Father agreed that these two provisions were conflicting. Counsel suggested that the second paragraph be deleted from the order to alleviate any confusion. In light of the parties' agreement, we modify the trial court's order to delete the paragraph at the bottom of page thirteen and the top of page fourteen that orders Mother to pay for a round-trip airline ticket.

Mother complains also that the trial court erred in providing that both the surrender and return of the child take place at Father's residence. This was another option available to the trial court as part of a standard possession order when the parties do not choose air travel as an option. *See* TEX. FAM.CODE ANN. § 153.316(3)(B) (Vernon 2002). Accordingly, this provision does not vary from a standard possession order.

Finally, Mother contends the trial court erred in failing to provide that she could begin her period of possession at the time school is dismissed on Fridays and end her period of possession at the start of school on Mondays. The family code provides that, if a possessory conservator elects before or at the time of rendition of the modification order, the standard order

must expressly provide that the possessory conservator may begin her period of possession at the time the child's school is regularly dismissed and end her period of possession at the time school resumes. *See* TEX. FAM.CODE ANN. § 153.317 (Vernon Supp.2006). The Mother timely made the election provided for in section 153.317. The trial court's modification order does not provide for this election. Mother timely requested the trial court to make findings as to why the order varies from the standard order. *See* TEX. FAM.CODE ANN. § 153.258 (Vernon 2002). Pursuant to section 153.258, when a trial court enters a possession order that varies from a standard possession order and a party timely requests findings with respect to the variance, the trial court shall state its reasons for the variance from the standard possession order. The trial court did not state its reasons or make any findings.

We abated this appeal and ordered the trial court to make findings regarding why it did not provide for the election made by Mother pursuant to section 153.317. The trial court made the following two findings:

(1) It would be in the best interest of the child here that he be picked up by his mother when school is dismissed.

(2) Because of the geographic distance between the homes of the parties and the travel time involved, the best interest of the child would be served by maintaining the current schedule for the return of the child.

In accordance with the trial court's findings, we modify the trial court's order to allow Mother to pick up the child when he is dismissed from school on Fridays. The trial court has given a valid reason for maintaining the schedule for return of the child on Sunday evenings.

We sustain Mother's sixth issue to the extent we modify the trial court's modifica- tion order as set forth above. In all other respects, we overrule Mother's sixth issue.

## Time Limitation

In her seventh issue, Mother contends the trial court erred in limiting her case-in-chief. Specifically, she contends the trial court's action violated her constitutional right to due process.

 A trial court has the authority to control the presentation of evidence so as to avoid needless consumption of time. TEX.R. CIV. EVID. 611(a)(2); *Owens–Corning Fiberglas Corp. v. Malone,* 916 S.W.2d 551, 556 (Tex.App.-Houston [1st Dist.] 1996), *aff'd,* 972 S.W.2d 35 (Tex.1998). The court allowed Mother over two and one-half hours to present her testimony. Mother had requested one-half of a day. Because Mother represented herself, she testified by narration as opposed to question and answer format. The trial court noted that two and one-half hours of narrative monolog was essentially equivalent to one-half day of question and answer testimony.

We conclude the trial court did not abuse its discretion in setting a time limitation on Mother's testimony. *See* TEX.R. EVID. 611(a)(2). We overrule Mother's seventh issue.

## Evidentiary Complaints

In her eighth and ninth issues, Mother complains about various comments by the trial judge, the admissions of certain evidence, and the exclusion of certain evidence.

 Our appellate rules require an appellant's brief to contain a clear and concise argument for the contentions made with appropriate citations to authorities and the record. TEX.R.APP. P. 38.1(h). Failure to provide substantive analysis waives an issue on appeal. *Huey v. Huey,*

200 S.W.3d 851, 854 (Tex.App.-Dallas 2006, no pet.). Mother provides over one hundred citations to the record with regard to her complaints. However, Mother fails to provide any meaningful analysis of how the comments, admitted evidence, or excluded evidence was prejudicial to her. Under these circumstances, we conclude Mother has waived these issues. We overrule Mother's eighth and ninth issues.

## Sanctions

In her final three issues, Mother complains of the trial court's sanctions order. In her tenth issue, Mother contends the trial court's sanctions order is void because it was entered beyond the period of the trial court's plenary jurisdiction. We agree.

 After a trial court loses plenary power it has no authority to award sanctions. *Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594, 596 (Tex. 1996). A motion for sanctions does not survive the expiration of the trial court's plenary jurisdiction. *Jobe v. Lapidus*, 874 S.W.2d 764, 766 (Tex.App.-Dallas 1994, pet. denied).

The trial court entered its judgment on May 11, 2005. Mother timely filed a motion for new trial on May 18, 2005. Father filed his motion for sanctions on May 31, 2005. The trial court conducted a hearing on June 13 and 20. Mother's motion for new trial was overruled by operation of law on July 25, 2005. The trial court's plenary power expired on August 24, 2005. Accordingly, the trial court had no authority to enter any order in this case after August 24, 2005. Thus, the trial court's sanctions order dated October 17, 2005 is void.

We sustain Mother's tenth point of error. We conclude the sanctions order is void. Because of our disposition of Moth-er's tenth issue, we do not address Mother's eleventh and twelfth issues.

## Conclusion

We modify the trial court's modification order in two respects. First, we delete the paragraph at the bottom of page thirteen and the top of page fourteen of the order that orders Mother to pay for a round-trip airline ticket. Second, we modify the order on page eight to reflect that Mother may begin her weekend possession when the child is dismissed from school as opposed to 6:00 p.m. on the day school recesses. As modified, we affirm the trial court's modification order.

We reverse the sanctions order of October 17, 2005 as void.