

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-17-00173-CV

IN THE INTEREST OF L.M., A
CHILD

----------

FROM THE 415TH DISTRICT COURT OF PARKER COUNTY
TRIAL COURT NO. CV16-0106

----------

## MEMORANDUM OPINION[1]

----------

In this suit affecting the parent-child relationship (SAPCR), L.M.'s mother challenges the parts of the trial court's order requiring (1) that Mother share equally in the expense of L.M.'s traveling to and from Florida to visit Father in accordance with the parties' agreed standard possession order, (2) that L.M.'s

---

[1]*See* Tex. R. App. P. 47.4.

last name be changed to include a hyphenated version of Mother's and Father's last names, and (3) that Mother pay $5,000 in attorney's fees to Father. She also contends that the trial court erred by refusing to require that L.M. be accompanied by a parent or other family member when travelling to and from Florida to visit Father. We affirm in part and reverse in part.

## I.    Background

Mother and Father lived together before L.M. was born in Florida in 2008. Mother and L.M. did not initially live with Father after L.M.'s birth, but they moved in with him for a few months sometime after L.M. was born. Around April or May 2010, Mother moved to Texas without telling Father even though he had been requesting to see L.M.[2] Nevertheless, in November 2010, a Florida judge ordered Father to pay monthly child support for L.M.

Although Father had contact with L.M. "pretty regularly" while she and Mother had lived in Florida, after they moved to Texas, Father had contact with L.M. only a few times when Mother visited Florida. Father did not attempt to visit L.M. in Texas. In 2016, Father filed this SAPCR in Parker County where Mother and L.M. live, seeking to be named a joint managing conservator of L.M. with a standard possession order and to lower his monthly child support obligation.[3]

---

[2]Father found out from his sister that Mother and L.M. had moved and did not know their whereabouts for some time.

[3]*See* Tex. Fam. Code Ann. § 156.001 (West 2014) (providing that a court of continuing, exclusive jurisdiction may modify an order that provides for child support).

Father also requested that the trial court allocate to Mother some of the responsibility for increased travel costs to bring L.M. to Florida.

Father's initial petition did not include a request that L.M.'s name be changed. But in his second amended petition, which he filed on February 15, 2017, twenty-six days before trial, he asked that L.M.'s last name be changed to his last name.

At trial, Mother and Father agreed to be named joint managing conservators subject to a standard possession order. Mother sought an additional requirement that a parent or other family member escort L.M. on any flight to or from Florida for purposes of Father's visitation. Father contended that only a flight attendant escort—necessitating an additional airline fee—would be appropriate. Father also requested that Mother pay half of the travel expenses for L.M. to fly to Florida four times per year.

Before trial began, Mother's counsel objected to proceeding on the name change request because she contended that it was a new cause of action for which the rules of civil procedure require no less than forty-five days' notice before trial. *See* Tex. R. Civ. P. 245. The trial court overruled her objection. During Father's testimony, he asked only that L.M.'s last name be changed to a hyphenated version of his and Mother's last names.

The trial court signed an order (1) including the parties' agreed stipulations but also changing L.M.'s last name as requested by Father at trial, (2) ordering Mother to pay "50 percent of traveling cost[s] for [L.M.] to exercise possession for

3

Christmas, Thanksgiving, Spring break and Summer possession with [Father]," and also (3) ordering Mother to pay $5,000 to Father's counsel for reasonable attorney's fees and expenses. The trial court did not order that a parent or family member escort L.M. on any flight.

At Mother's request, the trial court filed findings of fact and conclusions of law. Mother appealed the trial court's order. In her brief, she raises four issues: (1) the trial court abused its discretion by permitting trial to proceed on the name change cause of action on less than forty-five days' notice; (2) the evidence is legally and factually insufficient to support the trial court's findings that the name change is in L.M.'s best interest and that good cause exists to change her name; (3) the evidence is legally and factually insufficient to support the trial court's findings regarding increased travel expenses and its refusal to order that a parent or family member must accompany L.M. when she flies to visit Father in Florida; and (4) the trial court abused its discretion by ordering Mother to pay Father's attorney's fees.

## II.  Name Change Claim a Surprise

Mother argues in her first issue that the trial court erred by proceeding to trial on Father's name change request because she did not receive sufficient notice of that cause of action before trial. Mother contends that "[a] name change is a specific and separate cause of action provided by the Texas Family Code." Mother relies on rule of civil procedure 245, which requires the trial court, in contested cases, to give the parties reasonable notice—not less than forty-five

4

days—of a first trial setting. *Id.* Here, a trial setting notice was filed with the trial court clerk on January 18, 2017, setting the trial date for March 13, 2017. Mother concedes she was aware of the trial setting and does not claim she had insufficient notice regarding the other contested matters at trial.

A party may include a new cause of action in an amended pleading. Tex. R. Civ. P. 62 ("The object of an amendment[, among other things] . . . is to . . . plead new matter . . . which constitutes an additional claim . . . permissible to the suit."); *Double Diamond, Inc. v. Barber*, No. 11-02-00277-CV, 2003 WL 21804872, at *3 (Tex. App.—Eastland Aug. 7, 2003, no pet.) (mem. op.). A party may also file an amended pleading without leave of court until seven days before trial—or another time set by the trial judge in a scheduling order—so long as the amendment does not operate as a surprise to the opposing party. Tex. R. Civ. P. 63; *In re Estate of Henry*, 250 S.W.3d 518, 526 (Tex. App.—Dallas 2008, no pet.). Thus, the specific pleading rules undercut Mother's argument that rule 245 precludes the filing of an amended pleading with a new cause of action less than forty-five days before trial.[4]

---

[4]The cases Mother cites in support of her argument are distinguishable. In *Double Ace, Inc. v. Pope*, the trial court allowed trial to proceed against a newly added third-party defendant whom the defendants had joined only twenty-eight days before the trial. 190 S.W.3d 18, 24–25 (Tex. App.—Amarillo 2005, no pet.). *LBL Oil Co. v. International Power Service, Inc.*, involved a post-answer default judgment rendered without notice to a party who had made a general appearance in the case by filing a motion to dismiss. 777 S.W.2d 390, 390–91 (Tex. 1989).

Although Mother does not explicitly argue in her brief that the trial court erred by determining that the pleading amendment did not work a surprise to her under rule 63, Mother does rely on her trial argument that she lacked time to obtain evidence regarding the name change; thus, we consider whether the amendment operated as a surprise to her as a subsidiary question fairly included in her brief. *See* Tex. R. App. P. 38.1; *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). At trial, Mother's counsel argued that she did not have adequate time to have the child examined by a counselor or to find some other way to obtain evidence of L.M.'s wishes regarding the name change. *See In the Interest of S.M.–R.*, No. 02-15-00287-CV, 2016 WL 6900902, at *2 (Tex. App.—Fort Worth Nov. 23, 2016, no pet.) (mem.op.) (listing nonexclusive factors trial court may consider in deciding whether name change is in a child's best interest). Additionally, she argued that she had not had enough notice to be able to secure the child's counselor as an expert witness. *See id.* Father's counsel noted that L.M.'s counselor's name was "on the discovery list as a witness to proceed" and that Mother could testify to whether the name change would cause L.M. anxiety.

In considering whether an amended pleading operates as a surprise to a party, we may consider several nonexclusive factors: (1) how long the suit had been on file before the amendment was filed, (2) how soon before trial the amendment was made, (3) whether the amendment presented a new claim or cause of action, (4) whether the new cause of action was based on recently

6

discovered matters, and (5) whether the resisting party alleged surprise and that the party was not prepared to try the new cause of action. *See Dunnagan v. Watson*, 204 S.W.3d 30, 38 (Tex. App.—Fort Worth 2006, pet. denied); *Stevenson v. Koutzarov,* 795 S.W.2d 313, 321 (Tex. App.—Houston [1st Dist.] 1990, writ denied) (op. on reh'g).

Father filed his original petition on February 1, 2016, and he filed his second amended petition on February 15, 2017, twenty-six days before trial. Family code section 45.002 requires that a name change petition be verified and that it include the reason the name change is requested. Tex. Fam. Code Ann. § 45.002(a)(2) (West 2014). Father did not verify his petition, and he stated only generally that good cause existed for the name change and that the name change was in the child's best interest, without giving any supporting details. At trial, Father's counsel informed the judge that "[n]ormally, that is just a standard thing that goes in this type of a motion, it just got left out the first time by accident." Thus, the name change request was not based on recently discovered matters. And Mother alleged that she did not have time to obtain evidence she needed in response to the name change request. Accordingly, considering the factors set forth above in context of the entire record, we hold that the trial court erred by allowing trial to proceed on the name change. *See Stevenson,* 795 S.W.2d at 321.

We sustain Mother's first issue. Having sustained her first issue challenging the trial court's name change order, we need not address her second

7

issue challenging the sufficiency of the evidence to support the name change. *See* Tex. R. App. P. 47.1.

### III. Travel Provisions

In her third issue, Mother challenges the sufficiency of the evidence to support the trial court's findings that

- she has sufficient income to pay one-half of the requested traveling expenses;

- it is fair, equitable, and in L.M.'s best interest to require her to pay one-half of the traveling expenses;

- L.M. "is age-appropriate" to fly on an airplane with only a flight-attendant escort; and

- the traveling provisions are required and necessary to facilitate visitation with Father under Family Code section 153.257 and are in L.M.'s best interest.

The best interest of the child is always to be the court's primary consideration when determining terms of possession and access to a child. Tex. Fam. Code Ann. § 153.002 (West 2014); *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002). We review a trial court's possession and visitation decisions for abuse of discretion. *Pearson v. Pearson*, No. 03-13-00802-CV, 2016 WL 240683, at *10 (Tex. App.—Austin Jan. 15, 2016, no pet.) (mem. op.). We will not reverse a trial court's possession and visitation decisions unless the trial court acted

8

unreasonably, arbitrarily, or without reference to any guiding rules and principles. *Id.*

When determining whether the trial court has abused its discretion in making possession and visitation decisions, we do not consider legal and factual sufficiency of the evidence as independent grounds of error but rather relevant factors in assessing whether the trial court abused its discretion. *Id.* In making this determination, we consider whether the trial court had sufficient evidence upon which to exercise its discretion and, if so, whether it erred in the exercise of that discretion. *Id.*; *In re T.D.C.,* 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied). No abuse of discretion exists when the trial court bases its decision on conflicting evidence so long as the record contains some evidence of a substantive and probative character to support the trial court's decision. *Pearson*, 2016 WL 240683, at *10. We will uphold the trial court's judgment on any legal theory supported by the evidence. *Id.*

### A. Payment of Traveling Expenses

When considering how to allocate travel expenses, "the trial court should consider the parties' financial situations to ensure that the travel expenses are not so great that they would prevent the proper support of the [child] by either party." *In re N.T.P.,* 402 S.W.3d 13, 22 (Tex. App.—San Antonio 2012, no pet.) (quoting *Matter of the Marriage of Bertram*, 981 S.W.2d 820, 830 (Tex. App.— Texarkana 1998, no pet.)). Here, the evidence before the trial court of what the child's travel expenses would be was minimal. *See In the Interest of A.M.*, No.

9

04-16-00335-CV, 2017 WL 1337648, at *3 (Tex. App.—San Antonio Apr. 12, 2017, no pet.) (mem. op.) (holding that without evidence of what travel expenses would be, record contained no evidence that the cost of travel would be so great that it would prevent appellant from properly supporting A.M.). Father provided evidence that he had booked several one-way flights in December 2016: one cost $210.98 and another, which was a reschedule with several days' notice, cost $227.84. A second rescheduled flight—booked within hours of the first rescheduled flight—would have cost $467 one way. Thus, we can draw a reasonable inference that for L.M. to fly to see Father four times per year, with sufficient advance booking, the total cost would be between $1,688 to $1,823, with Mother's portion being around $844 to $911 per year. *See generally City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005).

Mother testified that she makes about $45,000 per year with a "$2,000 or $3,000" end-of-the-year bonus. She lives with her boyfriend. Father testified that he makes $53,348 per year. He lives alone but another man sometimes stays with him from time to time. Although the trial court lowered Father's child support obligation from $745 per month to $661 per month,[5] it also ordered Father to obtain health insurance for L.M., which Father had testified would cost him about

---

[5]In determining whether application of child support guidelines would be unjust or inappropriate under the circumstances, family code section 154.123 requires that the trial court take into account a number of factors including the cost of travel to exercise possession of and access to the children. Tex. Fam. Code Ann. § 154.123(b) (West 2014).

$60 per week. Mother testified that she had been paying about $230 per month for health insurance for L.M. She also testified that if the trial court ordered that either a family member or parent escort L.M. on flights, she would be willing to pay for "part of" the expense and that if Father would agree to exercise his visitation in Parker County, she would be willing to pay for a hotel room for him.

Mother argues that Father's failure to attempt to visit L.M. in Texas before filing suit and the fact that she had previously paid for L.M.'s health insurance shows that ordering her to pay half of L.M.'s travel costs is inequitable. But in light of the fact that Mother chose to move with L.M. to Texas and the fact that she conceded she was willing to pay "some" travel expenses—as well as the small difference between her income and Father's and the fact that she will be saving approximately $146[6] per month by no longer having to pay for L.M.'s health insurance—we hold that the evidence is both legally and factually sufficient to support the trial court's findings that Mother has sufficient income to pay for half of L.M.'s travel expenses and that it is fair, equitable, and in L.M.'s best interest that she do so. Thus, the trial court did not abuse its discretion in that part of its order.[7]

---

[6]Mother testified that it cost her about $230 a month to insure L.M. But because the trial court reduced Father's monthly child support obligation from $745 to $661 per month, we take that reduction into account in determining what funds would be available to Mother for travel.

[7]The trial court also found that Mother did not rebut the presumption in family code section 156.103, which provides that "[i]f a change of residence results in increased expenses for a party having possession of or access to a

11

## B. Parent or Family-Member Accompaniment

Finally, Mother argues that the evidence does not support the trial court's findings (1) that L.M. is age appropriate to fly without a parent or family member escort and (2) that "[a]dditional travel provisions are required due to the need for long distance travel . . . pursuant to Section 153.257 of the Family Code" because

> the evidence shows that requiring the child to travel without a family member escorting her at the age of eight causes the child stress. . . . The child's visits with her Father in Florida have not been shown to improve their relationship. The child exhibited serious fear and emotional outbursts when asked to take a flight with only a flight attendant escort.

[Record citations omitted.]

> Family code section 153.257 provides that

> [i]n an order providing for the terms and conditions of possession of a child, the court may restrict the means of travel of the child by a legal mode of transportation only after a showing of good cause contained in the record and a finding by the court that the restriction is in the best interest of the child. The court shall specify the duties of the conservators to provide transportation to and from the transportation facilities.

---

child, the court may render appropriate orders to allocate those increased expenses on a fair and equitable basis, taking into account the cause of increased expenses . . . and the best interest of the child" and that "[t]he payment of increased expenses by the party whose residence is changed is rebuttably presumed to be in the best interest of the child." Tex. Fam. Code Ann. § 156.103(a), (b) (West 2014). But this presumption did not apply according to the statute's plain language because Father did not have court-ordered possession of or access to the child when Mother moved. Nevertheless, we conclude that the trial court did not abuse its discretion, regardless of whether the section 156.103 presumption applied.

Tex. Fam. Code Ann. § 153.257 (West 2014). In its conclusions of law related to

the flying provisions, the trial court determined that

> 8. The traveling provisions set out in the order are required and necessary to facilitate visitation with . . . [F]ather in accordance with Section 153.257[;]
>
> 9. There was no good cause shown to restrict provisions of transportation[; and]
>
> 10. The provisions regarding long distance travel are necessary and in the best interest of the child.

Father's theory at trial was that after his first extended visit with L.M. in

summer 2016, which Father claimed went well, Mother undermined further visits

with L.M. in violation of the trial court's temporary order by monitoring his phone

calls with L.M., failing to support his Skype calls with L.M., and manufacturing

excuses to keep L.M. from visiting him in December 2016.[8] In light of his theory

that Mother's attempted control was impeding his access to L.M., it makes sense

that he would testify that L.M. was able to fly to and from Florida without the need

for an escort other than a flight attendant for whose supervision an extra fee

would be paid. In contrast, Mother's theory was that after L.M.'s summer visit

---

[8]Mother testified that L.M. had been sick with diarrhea the week before the first scheduled flight, on December 17, 2016, and that L.M. "spiked a fever" and threw up within the two days before she was scheduled to fly to Florida. Mother testified that she obtained a doctor's note advising against letting L.M. fly that day; the note was not admitted into evidence. Mother also testified that she mixed up the times for the first rescheduled flight, on December 22, 2016, and thought the arrival time in Florida was the departure time from Dallas. L.M. ended up missing all of her December 2016 visitation with Father.

with Father, L.M. stopped wanting to visit with Father of her own accord. Mother also was on the phone with her sister when L.M. refused to board the last flight that Father had rescheduled in December 2016. Thus, Mother's testimony that L.M. was not ready to travel on an airplane without a parent or family member escort also makes sense.[9] But other than the parties' subjective opinions, there is no evidence as to whether a typical eight-year-old child is ready and able to fly alone for several hours escorted only by a flight attendant.

Mother's stepmother testified that she took L.M. to the airport to try to board the second rescheduled flight in December 2016. The airline allowed her and Mother's sister to accompany L.M. to the gate because L.M. was crying; when they tried to leave L.M. with a flight attendant at the gate, she cried more and did not want to go. According to Mother's stepmother,

> They really tried. They had at least six people, different people come out to talk to [L.M], try to calm her down. Tell her, you know, that it was safe. They had a man come out and had the little paper cardboard airplane that they put together to try to get her to stop crying. They then had a stewardess come out and she was wonderful, real warm, kind of motherly person to try to talk to [L.M.] to get [her] to go on the plane. They did a lot. I mean, I was surprised at how hard -- they even had a man whose daughter was flying alone. She was a lot older than [L.M.], but they changed the person that was sitting next to her, they changed that person's seat so [L.M.] could have, you know, a girl semi-close to her age as well to be able to sit with. They did quite a bit. But [L.M.] wasn't budging.

---

[9]Mother also believed that a flight attendant would be unable to provide continuous supervision because he or she would have other duties that would take precedence.

14

Mother's stepmother also testified that L.M. cried the whole time and would get increasingly anxious when it appeared that someone was trying to get her to go on the plane. She further testified that L.M. kept saying, "I don't want to go. I don't want to go. Daddy is mean. Daddy is mean. I don't want to go. And just never stopped." According to Mother's stepmother, the airline refused to allow L.M. on the plane because if she were allowed to board in her agitated state, they could not accommodate her once the plane took off. Father admitted that the airline sent a note saying "something about [L.M.] was upset, couldn't get on the flight, was sick." The note was not admitted into evidence, however.

The trial court's modification order requires each party to "surrender the child to a flight attendant who is employed by the airline and who will be flying on the same flight on which the child is scheduled," and it requires them to pick up L.M. "at the specific airport gate where the passengers from the child's scheduled flight disembark." It further requires Father to purchase L.M.'s flights from Texas to Florida in advance and to make arrangements with Mother so that the tickets are available in advance of the flight; it requires the same of Mother for L.M.'s return flights to Texas from Florida.

As the party with the burden of proof to support the imposition of a parent or family member-escort restriction, Mother has to show on appeal that there is either no evidence to support the trial court's denial of such a restriction or that the trial court's refusal to include such a restriction is against the great weight and preponderance of the credible evidence. *See Dow Chem. Co. v. Francis*, 46

15

S.W.3d 237, 241–42 (Tex. 2001). The parties tried the SAPCR contemporaneously with Father's motion to enforce the temporary orders by contempt. Accordingly, the trial court heard Father's testimony in support of his theory that Mother manufactured reasons for L.M. not to board a plane in December 2016 to visit him. Additionally, the trial court heard evidence that Mother had refused to surrender possession of L.M. to Father on the first Saturday of L.M.'s spring break—even though she had previously asked Father to begin his periods of possession on Saturdays—which was the weekend before the trial. Mother testified that she did so because she was going out of town that Saturday and she thought that if Father did not strictly comply with the temporary order requiring him to pick L.M. up from her house Friday night at 6 p.m., he forfeited all of his spring break possession. The judge thus ordered Mother to surrender possession of L.M. to Father immediately at the conclusion of the trial. In support of its finding that Mother should be responsible for the allocation of increased expenses, the trial court found that Mother "does not actively promote a positive relationship between [Father] and the child."

In pronouncing his rulings at the end of trial, the judge spoke directly to Mother:

> The entire Christmas season went by without your daughter seeing her dad. Now what child wouldn't benefit from that experience? And I'm not so naive as to think that what transpired out at the airport was conjured up in the mind of an eight-year-old child exclusively.

16

. . . And if she's upset going to the airport, if she's upset on the phone, you ought to be concerned about that. And he ought to be included in the dialogue. You're not his dictator.

Thus, it is apparent from the record that the trial court believed that L.M.'s travel difficulties had more to do with Mother's influence and reluctance to allow contact with Father than with L.M.'s age. Although we cannot second-guess the trial court's implied finding that L.M.'s refusal to board the plane was at least partially a product of Mother's influence, the fact remains that there is no evidence in this record aside from the parties' subjective opinions that an eight-year-old child is "age appropriate" to fly with only a flight attendant escort. The evidence shows that this particular child had never flown without the accompaniment of a parent or family member. Father even testified that he rejected Mother's proposal to reschedule one of the missed December 2016 flights to a later time because, "First time flying alone without a parent, okay, hasn't been feeling well and arriving in Orlando almost at midnight, wouldn't get home until after 2:00 a.m., do you think that's appropriate for an eight-year-old?" Father presented no evidence rebutting the step grandmother's testimony that the airline refused to allow L.M. to board a flight because of her anxious and emotional behavior, regardless of the source or cause of that behavior. Moreover, the trial court's current order—requiring Mother to turn over possession of L.M. to a flight attendant for departing flights and pick up L.M. from a flight attendant for returning flights—appears to prohibit Mother from voluntarily paying for her own flights to accompany L.M. Based on this record, therefore, we

17

hold that the trial court abused its discretion by refusing to impose such a restriction,[10] and we sustain this part of Mother's third issue.

## IV. Attorney's Fees

In her fourth issue, Mother claims that the trial court abused its discretion by ordering her to pay the entirety of Father's attorney's fees under chapter 106.002 of the family code because (1) the trial proceeded on a cause of action for which Mother had not been given proper notice, (2) there is insufficient evidence to support the findings on which the challenged part of the order are based, and (3) Father was not the prevailing party at trial because he had originally pleaded to be named the parent with the exclusive right to designate the child's primary residence. Because we are remanding for a new trial on the name change cause of action and on the trial court's refusal to impose a requirement that L.M. be accompanied by a parent or family member escort on flights, the trial court should also have the opportunity to reconsider its attorney's

---

[10]We also reject the trial court's conclusion that "[t]here was no good cause shown to restrict provisions of transportation," to the extent that the conclusion is intended to support denying a requirement that a parent or family member escort L.M. on flights. There is no evidence that by imposing such a requirement, the trial court would be prohibiting L.M. from flying to visit Father in Florida. *See* Tex. Fam. Code Ann. § 153.257 (prohibiting trial court from "restrict[ing] the means of travel of the child by a legal mode of transportation" without good cause); *In re M.A.S.*, 233 S.W.3d 915, 923 (Tex. App.—Dallas 2007, pet. denied) (holding that trial court did not restrict means of travel by placing provisions on the type of method of transportation the child had to take to and from the airport because flying was still permitted).

18

fees award on remand. *See Bruni v. Bruni*, 924 S.W.2d 366, 369 (Tex. 1996); *In re M.D.C.*, 171 S.W.3d 361, 364 (Tex. App.—Dallas 2005, no pet.).

## V. Conclusion

Having overruled part of Mother's third issue, we affirm the part of the trial court's order requiring Mother to pay half of L.M.'s travel expenses. Having sustained the remainder of her third issue, we reverse the part of the trial court's order denying Mother's request to include a provision requiring L.M. to be escorted by a parent or family member on every flight to and from Florida for Father's visitation, and we remand for a new trial on that issue. Having sustained Mother's first issue, we reverse the part of the trial court's order changing L.M.'s last name and remand that issue to the trial court for a new trial on that cause of action. Finally, because we are remanding for a new trial on two of Mother's issues, we reverse the $5,000 attorney's fees award to Father.

/s/ Wade Birdwell
WADE BIRDWELL
JUSTICE

PANEL:  GABRIEL, PITTMAN, and BIRDWELL, JJ.

DELIVERED:  June 28, 2018

19