

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00092-CV

———————————————

NATALIE STROIK, Appellant

V.

DAVID STROIK, Appellee

---

On Appeal from the 481st District Court
Denton County, Texas
Trial Court No. 20-1192-431

---

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Natalie Stroik appeals the trial court's order granting Appellee David Stroik's petition for enforcement, holding her in contempt, and granting judgment against her for attorney's fees. In two issues, Natalie argues that (1) the December 13, 2021 "Order Granting Petition For Enforcement, Holding Respondent in Contempt and Granting Judgment Against Respondent For Attorney's Fees" (Enforcement Order) is void because the trial court modified or amended the terms of the property division in the divorce decree in violation of Chapter 9 of the Texas Family Code, and (2) the trial court violated her due process rights by preventing her from presenting her counterclaims and responding to David's claims. We reverse and remand.

## I. Background

The trial court signed an "Agreed Final Decree of Divorce" for Natalie and David on December 8, 2020. As relevant to this appeal, Natalie was awarded:

- The marital residence, subject to refinance provisions set out in the decree.

- One hundred percent of the community interest in the business known as iRad Consulting, LLC (iRad).

- Three iRad bank accounts subject to David receiving fifty percent of the funds therein on the date of divorce.

- All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, equipment, clothing, jewelry, and other personal effects in her possession or subject to her control.

As relevant to this appeal, David was awarded:

- Payment of fifty percent of the equity in the house as specified under the provisions regarding refinance of the marital property.

- Assets from iRad, including an X-2 Raysafe meter and X2 Dent sensor, a Dexcowin handheld dental x-ray unit, and a therapeutic laser.

- All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, equipment, clothing, jewelry, and other personal effects in his possession or subject to his control.

- Payment of fifty percent of the funds in three iRad bank accounts on the date of divorce.

- Fifty percent of iRad accounts receivable, to include accounts receivable on the date of divorce and all dosimetry invoicing subject to David sending all iRad invoicing within five days of the divorce decree and subject to paying all outstanding bills owed to the company Mirion based on the same accounts receivable.

On March 1, 2021, David filed a motion seeking to enforce the property division by contempt. While the motion to enforce was still pending, the trial court signed an order on June 18, 2021, titled "Orders of May 22, 2021 and June 10, 2021." In that order, the trial court stated that it heard David's requests for injunctive relief and for temporary injunction as well as the underlying request for clarification filed by David. The trial court found that the parties were enjoined from selling the residence unless they mutually agreed in writing. The trial court further found certain clarifications to the divorce decree were necessary and clarified the provisions relating to the appraisal and refinancing of the marital residence. Natalie appealed from the June 18, 2021 order, and this court dismissed the appeal as moot because the trial court had subsequently

3

entered an order appointing a receiver to take charge of the marital residence and then approved the sale of the residence. *Stroik v. Stroik*, No. 02-21-00207-CV, 2022 WL 5240394, at *1–2 (Tex. App.—Fort Worth Oct. 6, 2022, no pet.) (per curiam) (mem. op.).

On June 11, 2021, David filed his "Second Amended Petition for Enforcement of Property Division," and Natalie filed a "Second Amended Answer and Counterclaim." The trial court held a hearing on those pleadings on June 18, 2021. At the hearing, David testified that he had not received fifty percent of the funds in the three iRad accounts, the X-2 Raysafe meter and Dent sensor, or his personal items. The hearing was recessed until October 26, 2021. Before the October 26 hearing, David filed a "Third Amended Petition for Enforcement and for Sanctions" seeking (1) the appointment of a receiver for the marital residence and the sale of the marital residence, (2) a judgment for one half of the funds in the iRad accounts, (3) that Natalie be ordered to turn over the X-2 Raysafe meter and Dent sensor, (4) that Natalie be ordered to turn over his personal clothing, jewelry, and other personal effects located in the marital residence, (5) that Natalie be held in contempt and jailed for each violation, and (6) attorney's fees.

At the October 26 hearing, the trial court notified the parties that they would each have an hour and a half to present their respective cases. Natalie's counsel requested additional time, but the trial court denied the request. Natalie's counsel used

4

the allotted time during the cross-examination of David and was not allowed any additional time to present any evidence on Natalie's counterclaim.

On December 9, 2021, the trial court held a hearing on the entry of the final order. At the hearing, David's counsel noted that he had waived incarceration as a remedy for contempt and left a blank on the proposed order for the trial court to determine punishment, if any, for contempt. David's counsel also stated that he would nonsuit without prejudice David's claims concerning the marital residence so that the parties could get a final order. On December 13, 2021, the trial court signed an order that nonsuited without prejudice David's request for the sale and appointment of a receiver for the marital property.

The trial court signed the Enforcement Order granting David's petition for enforcement and finding five violations of the divorce decree by Natalie. The first three violations were for Natalie failing to turn over one half of the funds in the three iRad bank accounts. The fourth violation was for Natalie failing to turn over the X-2 Raysafe meter and Dent sensor in good working order. The fifth violation was for Natalie failing to turn over David's personal belongings from the marital residence. The trial court ordered Natalie (1) to pay to David $100, $5,877.19,[1] and $241.96 on or before December 14, 2021, for his fifty percent of the three iRad bank accounts as of the date of the divorce; (2) to repair or replace the X-2 Raysafe meter and Dent sensor and

---

[1]We note that the order erroneously states that $5,877.19 was to be paid on or before December 14, 2020, rather than December 14, 2021.

5

deliver them to David on January 5, 2022; and (3) to turn over to David his personal belongings listed in the final order between December 11–30, 2021. The trial court adjudged Natalie in contempt for each violation but did not order any punishment for the contempt. The trial court further ordered Natalie to pay David's attorney's fees. The trial court denied Natalie's requested relief in her counterclaim.

## II. Due Process

We will begin with Natalie's second issue in which she argues that the trial court violated her right to due process by prohibiting her from presenting testimony and evidence in her own defense and by prohibiting her from presenting testimony and evidence to prosecute her counterclaim.

## A. Applicable Law

A trial court has broad discretion over the conduct of a trial and the exclusion of evidence. *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 161 (Tex. 2015) (citing *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001)); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240–41 (Tex. 2001); *Johnson v. Paxton*, No. 02-22-00459-CV, 2023 WL 5115303, at *4 (Tex. App.—Fort Worth Aug. 10, 2023, no pet. h.) (mem. op.). In the exercise of this discretion, a trial court may, among other things, "control the presentation of evidence so as to avoid needless consumption of time." *In re M.A.S.*, 233 S.W.3d 915, 924 (Tex. App.—Dallas 2007, pet. denied); *see State v. Gaylor Inv. Tr. P'ship*, 322 S.W.3d 814, 819 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Every trial court has the inherent power to control the disposition of the cases on its docket

6

'with economy of time and effort for itself, for counsel, and for litigants.'" (quoting *Hoggett v. Brown*, 971 S.W.2d 472, 495 (Tex. App.—Houston [14th Dist.] 1997, pet. denied))); *see also* Tex. R. Evid. 611(a)(2). Though broad, the trial court's discretion in handling trials is not unfettered. *Gaylor Inv. Tr. P'ship*, 322 S.W.3d at 819. "The control given the trial judge must be exercised reasonably, and a party must be given a fair opportunity to present its case so that the factfinder may ascertain the truth." *In re Moreno*, No. 11-10-00353-CV, 2010 WL 5059519, at *4 (Tex. App.—Eastland Dec. 10, 2010, orig. proceeding) (mem. op.).

When—as here—a decision will affect an individual's property rights, "[d]ue process requires . . . an opportunity to be heard at a meaningful time and in a meaningful manner." *Reynoso v. Dibs, US, Inc.*, 541 S.W.3d 331, 339 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Tex. Workers' Comp. Comm'n v. Patient Advocs. of Tex.*, 136 S.W.3d 643, 658 (Tex. 2004)).

Given a trial court's broad discretion regarding the management of trials and the exclusion of evidence, we review a trial court's imposition of time limits at trial—and any exclusion of evidence resulting therefrom—under an abuse-of-discretion standard. *See In re B.W.S.*, No. 05-20-00343-CV, 2022 WL 2712494, at *3 (Tex. App.—Dallas July 13, 2022, no pet.) (mem. op.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Seliger v. Ethiopian Evangelical Church*, No. 03-14-00621-CV, 2016 WL 3677618, at *2 (Tex. App.—Austin July 7, 2016, pet. dism'd w.o.j.) (mem. op.) (citing *Downer v.*

*Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). Erroneous exclusion of evidence is reversible only if it probably resulted in an improper judgment or probably prevented the appellant from properly presenting his case to the court of appeals. *See* Tex. R. App. P. 44.1(a); *Monsanto Co. v. Davis*, 25 S.W.3d 773, 786 (Tex. App.—Waco 2000, pet. dism'd w.o.j.).

## B. Hearing on Petition for Enforcement

The hearing on David's petition for enforcement began on June 18, 2021. David's counsel called David to testify, and the hearing concluded at the end of the direct examination. When the hearing resumed on October 26, 2021, the trial court informed the parties they would each have an hour and a half to present their respective cases. Natalie requested additional time because David had already been given time at the June 18 hearing. The trial court responded, "No. Just no. Just no."

Natalie's trial counsel began with the cross-examination of David and used considerable time questioning him on the appraisal process for the marital home. The trial court gave time warnings to Natalie's counsel during the cross-examination. Counsel argued that it was not equitable and that he should be given more time. The trial court responded, "Nope." When the trial court again gave a time warning, counsel stated that it was "untenable." The trial court responded that the time was "split in half, and we're going to be finished today." Counsel reiterated his objection that opposing counsel had an opportunity to conduct the direct examination of David before the time limit was imposed. The trial court incorrectly responded that each party was given the

same amount of time. Trial counsel then argued that Natalie's constitutional rights were at issue because she was not permitted to be fully heard. The trial court responded, "Okay. Have a seat. We're done with this issue. Okay? Continue with questioning." The trial court stated that Natalie would have the opportunity to bring forth her counterclaim.

When Natalie's counsel had used his allotted time, the trial court terminated the cross-examination. Counsel noted that he had not put on Natalie to testify. The trial court stated, "Because you didn't save enough time. That's too bad." Counsel stated that he would "like to make a record that we are not finished with our examination." The trial court stated in response:

> I gave you time. We've - - this is the second hearing we've had. You had the ability to call a witness and did not call your witness within the time constraints. Have a seat. We're going forward.

Counsel stated that he wanted to make sure the record is clear that he had additional witnesses. The trial court told counsel he would be able to make a record later after the completion of the hearing.

David's counsel conducted redirect examination of David, and then called Natalie as a witness. Natalie's counsel asked if he would have an opportunity to question his client. The trial court informed Natalie's counsel, "I'm going to give her ten - - give you ten questions. . . . But each side gets the same amount." David's counsel asked Natalie over ninety questions. Natalie's counsel was not permitted to question her at

the hearing. Counsel reminded the trial court that he was supposed to get ten questions. The trial court stated, "No. Stop it right now."

David's attorneys then attempted to testify concerning their fees. Natalie's counsel continued to ask the trial court whether he would be permitted to ask any questions. The trial court stated, "I'm not going to answer anything more for you. I have explained it six, seven, or eight times. Do not make a sound. Have a seat." David's attorneys then testified concerning their fees, and the trial court permitted Natalie's counsel to ask about ten questions on cross-examination.

Natalie's counsel asked for an opportunity to make an offer of proof. The trial court informed counsel he would be able to make an offer of proof when "we are done." Counsel asked if he should make the offer of proof in person or submit something to the court. The trial court said that counsel did not have any witnesses for an offer of proof, but counsel stated that he did have witnesses. The trial court responded:

> No. We'll - - we'll just stay, but you got ten minutes to make an offer of proof. You don't need more than ten minutes. You've been doing nothing except wanting more time since you came in here, and every time possible, I have told you the two of you are getting the same amount.

Natalie's counsel asked if the trial court believed he got the same amount of time, and the trial court stated, "I'm not talking anymore about it."

At the end of closing arguments, the trial court said they needed to schedule a time for Natalie's counsel to make an offer of proof. Counsel indicated he would need

10

an hour to make the offer of proof, and the trial court agreed to give him an hour.

David's counsel objected to the offer of proof. The trial court then stated:

> I believe that there is a problem with it, allowing another - - allowing an offer of proof, so I am going to change my opinion and say no offer of proof necessary for the purpose of my determination.

Natalie's counsel asked, "So we do not get to put on any sort of offer of proof at all?"

The trial court responded, "I've already answered the question."

Natalie's counsel filed a "Motion to Modify Judgment" and a "Motion for New Trial" in which he stated:

> At the conclusion of the Petitioner's case in chief, the court closed the evidence and refused to allow Natalie Stroik to provide any evidence in her defense or in support of her counterclaims or her request for attorneys' fees.
>
> . . . When counsel for Natalie Stroik requested an opportunity to provide an offer of proof during trial or after trial, the Court denied Natalie Stroik's request.

To the motion for new trial, counsel attached "Exhibit A Offer of Proof – Natalie Stroik Testimony and Exhibits" and "Exhibit B Offer of Proof – Jeffrey C. Tasker Testimony and Exhibits."

## C. Analysis

While the trial court has broad discretion over the conduct at trial, that discretion is not unfettered. *Gaylor Inv. Tr. P'ship*, 322 S.W.3d at 819. At the October 26 hearing, the trial court imposed time restrictions without prior notice to the parties. Natalie's

counsel repeatedly requested more time, but the trial court refused those requests with condescending comments.

In *Johnson*, the trial court imposed time limits in a divorce trial. *Johnson*, 2023 WL 5115303 at *1. Husband complained that he was caught off guard by the trial court's imposition of time limits and that Wife was given more time to present evidence. *Id.* at *4. This court concluded that Husband was not unfairly surprised by the imposition of time limits and that the record did not support Husband's claim that Wife received more time to present evidence. *Id.* at *4–5. Unlike *Johnson*, the record in this case supports Natalie's argument that she received less time than David. David's counsel was able to conduct a direct examination of David without any time restrictions.

This court further held in *Johnson* that even if Husband could show that the trial court abused its discretion by imposing unfair time limits, reversal would still not be warranted because there is nothing in the record to suggest that Husband was harmed by the time restrictions. *Id.* at *5. This court noted that Husband's counsel admitted exhibits into evidence, that Husband testified at trial, and that Husband cross-examined every witness. *Id.* This court also stated that Husband's counsel never objected or complained at the end of trial that she had additional evidence or witnesses that would bear on the trial court's decision but that the time constraints precluded her from presenting. *Id.*

In contrast, because of the time limitations, Natalie's counsel was not permitted to call Natalie as a witness. Despite the trial court's assertion that Natalie's counsel

12

would be given ten questions, counsel was not allowed to question Natalie on cross-examination. Natalie's counsel repeatedly objected to the time restrictions and stated on the record that he had additional witnesses. Natalie was not given a fair opportunity to defend her case and present her counterclaim. *See Moreno*, 2010 WL 5059519, at *4.

After stating on the record more than once that counsel could make an offer of proof, the trial court denied Natalie's counsel an opportunity to make an offer of proof. An offer of proof is mandatory upon request. Tex. R. Evid. 103(c). Therefore, the trial court erred by refusing Natalie's request to make an offer of proof. *Id.*; *Stary v. Ethridge*, No. 01-21-00101-CV, 2022 WL 17684334, at *15 (Tex. App.—Houston [1st Dist.] Dec. 15, 2022, pet. filed).

The offer of proof allows the reviewing court to assess whether the exclusion of evidence was harmful. *See Fletcher v. Minnesota Mining and Mfg. Co.*, 57 S.W.3d 602, 608 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). Natalie's counsel was not permitted to call any witnesses to present evidence for her defense or for her counterclaim. Counsel was not permitted to question Natalie, his client, at all during the hearing or to put on evidence of his attorney fees. The substance of the requested evidence is not apparent from the record. *See* Tex. R. Evid. 103(a)(2). The trial court's error in refusing the offer of proof was harmful. Tex. R. App. P. 44.1.

We hold that the trial court abused its discretion by imposing time limitations that provided David with more time to present evidence than Natalie and by denying Natalie's request for an offer of proof. We sustain Natalie's second issue on appeal.

Because of our disposition of the second issue, we need not reach the first issue.[2] Tex. R. App. P. 47.1.

## IV. Conclusion

Having sustained Natalie's second issue, we reverse the trial court's Enforcement Order that granted the petition for enforcement, held Natalie in contempt, and awarded attorney's fees, and we remand the case to the trial court for proceedings consistent with this opinion.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: October 5, 2023

---

[2]We need not address Natalie's first issue complaining that the Enforcement Order is void. We do observe, however, that the trial court created considerable confusion over the nature of the Enforcement Order. David argues on appeal that the Enforcement Order is not a contempt order. We note, however, that the trial court repeatedly stated that it found Natalie in contempt. David's counsel waived incarceration as a remedy at the December 9 hearing on the entry of final order. Yet, the trial court adjudged Natalie in contempt but did not order any punishment for the contempt.